(No. 2096—

LOUIS OLSEN, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed October 13, 1937.*
*Rehearing denied January 13, 1938.*

MARSHALL SOLBERG and KELLAM FOSTER, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN and GLENN A. TREVOR, Assistant Attorneys General, for respondent; CARL DIETZ, of Counsel.

MR. JUSTICE YANTIS delivered the opinion of the court:

At the April term, 1931, the Village of Fox Lake instituted proceedings in the Circuit Court of Lake County for condemnation in its own name, against Louis Olsen, to secure certain lands for public highway purposes. Three parcels of land were included therein, but only one is involved in the present claim. On May 15, 1931, a trial was had and a verdict rendered, with judgment entered against the Village of Fox Lake and in favor of Louis Olsen for right-of-way, and damages, if any, to land not taken, in the sum of One Thousand Three Hundred Fifty ($1,350.00) Dollars. Prior to the condemnation suit an old road had existed at the point in question, called Sayton Road. After the condemnation suit the State constructed a section of S. B. I. Route No. 60 at said point, and it was for the purpose of inducing the construction of this section of hard road that the Village of Fox Lake condemned the land in question. It was the intention of said village to acquire a strip of land bordering on the east side of Sayton Road and extending from the north to the south limits of claimant's property. Through some inadvertence a small area was omitted from the description of parcel No. 3 which they sought to acquire. The hard road when constructed included within its bounds the five (5) foot strip in question and a piece of ground approximately 19.90 feet, x 57.71 feet. Claimant now avers that such additional footage has been improperly, wrongfully and illegally used by the defendant and is still being so used without the claimant having received anything in compensation therefor. He claims damages for the wrongful taking of the strip and for the shortening of his lots fronting on Route No. 60 as a result thereof. Claimant further contends that the Department of Public Works and Buildings changed the grade along the frontage of claimant's property, making his property inaccessible to said road and rendering same valueless as a result thereof; that such grading was unnecessary, and that such road could have been constructed with a reduction of the grade, thereby saving damage to claimant's property.

Claimant further contends that representatives of the Department of Public Works and Buildings represented to him that the fixed grade of the road would be·low enough so that they could and would fill in his lots to a level therewith at no expense to him; that prior to this time, in reliance upon his belief that the grade of the road would not be raised, claimant had filled in his land to about the level of the former road, at an expense of Twenty Thousand ($20,000.00) Dollars, and that the expense to which he would now be put in order to raise his grade to the newly established grade would involve an expense of approximately Twenty-six Thousand ($26,-000.00) Dollars more.

In his original complaint claimant asks damages:

1. For the strip of land taken and for damages due to the shortening of the property frontage, in the sum of.................. $ 3,000.00
2. For expense of 34,716 cubic yards of fill required to re-establish a fill to bring his abutting property to the newly established grade ...................................................... 26,037.00
3. Additional damage suffered by reason of raising of grade and rendering claimant's property less accessible................ 3,500.00

$32,537.00

Thereafter, an Additional Count to Claimant's Declaration was filed, with Bill of Particulars attached, in which he alleges his damages as follows:

1. Reasonable market value of strip of land described in Bill of Particulars, known as claimant's "Exhibit C," taken, occupied and used by respondent and part of Route No. 60, for which no compensation has been paid to claimant.................. $ 2,000.00
2. Decrease in the reasonable market value of claimant's premises not taken from $35.00 a front foot to $15.00 a front foot along a 915 foot frontage........................................ 18,300.00

$20,300.00

Respondent filed a Demurrer, to Plaintiff's Declaration, now treated as a motion to dismiss, and same has been considered with the case. A large amount of evidence has been taken, and the court, because of the extensive record and the amount involved, has personally viewed the premises in order to better familiarize themselves with the matter appearing in such evidence.

The variance in measurements used in the construction of the hard road in question seems to have resulted from the fact that years ago a five (5) foot strip was at first withheld

and later added to Sayton Road, and thereafter when measurements were made for the construction of the hard road in question, such measurements were apparently taken from the fifty-five (55) foot dividing line instead of the fifty (50) foot dividing line, but in the condemnation proceedings the additional five (5) feet were omitted, and as a result of such variance the actual construction work included the five (5) foot strip for the length of claimant's property, without same having been included in the condemnation proceedings. Claimant was present at the construction site at various times, consulting with the local engineer as to the location of culverts and other matters of interest to him, as an adjoining land owner, and neither he nor anyone else apparently observed from the location of survey stakes and such construction work that same was encroaching upon any land not intended to have been included in the condemnation proceedings. Claimant first observed or learned of such discrepancy when he saw the plat in the office of Mr. Ball, one of the engineers of the State Highway Department, (Transcript P. 58). Claimant's acreage from which the strip of ground was acquired for such roadway purposes is at the edge of the Village of Fox Lake, adjoining the railroad tracks and is a low poorly drained tract. Condemnation proceedings were resorted to for the purpose of acquiring the ground desired for the construction of the section of hard road in question. The jury in such proceedings viewed the premises, returned a verdict, and a judgment was entered upon such verdict fixing the just compensation for the taking of the property described therein at the sum of One Thousand Three Hundred Fifty ($1,350.00) Dollars. That verdict contained the following finding: "We, the jury, further find, from the evidence, that there is no damage to the fair cash market value of the adjoining premises of the defendant herein as described in the cross-petition filed in this cause." It appears that a conference was held at the time the condemnation proceedings were being had at Waukegan, in the spring of 1931, at which time there were present, Mr. Olsen and his Attorney Mr. Hall, Mr. Hollister the Mayor of Fox Lake, Mr. Hurley their Village Attorney, and Mr. L. W. Gunn of the Lake County Highway Office. Others present were, Mr. Frank Howard and Mr. Skiller, owners of other properties involved, and the former's Attorneys Messrs. Schultz and Rosch. The conference was in

Judge Dady's Chambers and he was present a part of the time. Mr. Leo A. Murphy, a Civil Engineer in the employ of the State Highway Department at that time, attended the meeting by request and answered various questions put to him as to the amount of fill that would be taken out of the roadway in the course of construction, near Mr. Olsen's frontage. Claimant testified:

"The burden was brought on me to settle this without a hearing, and I agreed to take it if they would put it back in the same condition and make the same grade. I asked for it, to have it in writing and Mr. Hollister (Mayor of Fox Lake) stated he could not give it in writing, as he had nothing in writing from the Highway Department to show that he could get that (14,000 cu. yds. of fill), only what they told him. Judge Dady said I could take Hollister's word for it that I would get that *if the Engineers give them the fill."*

Claimant further testified (Transcript P. 46):

"The engineers said they had that amount of fill to put in there * * * I said to Hollister * * * if he was to be holdup man he could just as well do it openly and not go behind my back."

It appears elsewhere in the record that only approximately half of the amount of fill was taken from the roadway and placed on claimant's land that was anticipated in advance, and as hereinabove noted. This fact forms a part of the basis of plaintiff's claim.

There is much conflicting evidence in the record as to curves, grades, elevations, value of claimant's land before and after the improvement, and the cost of additional fill to establish certain grades. The court has carefully considered all of same; but in the view we take of the claim it is not necessary to comment at length in regard to a large part thereof.

The State of Illinois did not acquire the right-of-way in question in the first instance. The Highway Department of Illinois would not interest itself in the construction plans until the village acquired such right-of-way. Being unable to agree with claimant and obtain a deed for the required footage, they resorted to condemnation proceedings. A transcript of such proceedings appears as a part of the record in this case. Counsel's contention that the comments made by the mayor of Fox Lake, Assistant Engineer Murphy and others in the conference during the condemnation proceedings would constitute an agreement or stipulation in open court to do certain things which would reduce the injury to property not taken, and thereby prevent damages that would

otherwise occur or exist, are not concurred in by the court. We agree with the following statement and citation as a matter of law, as contained in Counsel for Claimant's Reply Brief, to-wit:

"In reference to the agreement to furnish fill in *Elgin, Joliet* and *Eastern Illinois Railroad Co.* vs. *Fletcher*, 128 Ill. 619, 626, where the court said: 'We think it is competent upon the trial of a condemnation case, for the party seeking condemnation to bind itself by an offer in open court to the performance of duties like those here offered to be performed, (agreement in open court to maintain fences along its right-of-way over property of land owners and to construct and maintain an undercrossing) and to thereby, and to the extent that such performance will prevent damages that would otherwise occur, abridge the claim by the land owner for damages.' "

In the case at bar however, no stipulation appears in the record and the only statements that can be construed as an offer to furnish fill in any quantity to claimant, were the engineer's answers as to the amount of fill that might be expected, as shown by the specifications and Judge Dady's statement to claimant that the latter could take Mayor Hollister's assurance that he would get such fill, "if the engineers gave it to them."

The court is of the opinion that there is nothing contained in the record by which to attach any liability to the State for damages to lands of claimant not taken. Both by the jury's findings to that effect in the condemnation proceedings, and from the further taking of the five (5) foot strip and additional footage involved in this complaint, the court at this time on its own account, finds, from the evidence now before us, that there is no damage to the fair cash market value of the adjoining premises of the defendant herein as described in the complaint herein filed. We believe claimant is entitled to further recompense for the number of feet of ground taken by the State in the actual construction of the section of the road in question. Some doubt remains after a careful study of the record as to whether he in fact understood that the highway was to occupy the actual physical quantity of ground which would include the area now in dispute, or whether he knew where the boundary lines would be, as disclosed by the description appearing in the condemnation proceedings, but the fact remains that the disputed area was not included in the condemnation proceedings; that it was owned by claimant; that it was taken by the State and is now

being used as a part of S. B. I. Route No. 60; and that no payment has in fact been made for same.

As previously stated by the court, we believe it fundamental for the State to observe that *Section* of the *Constitution* which reads, "Private property shall not be taken or damaged for public use, without just compensation." *Sec. 13, Art. 2.*

The value of the land included in the condemnation proceedings has been established by the verdict and judgment rendered in such proceedings. No better basis for determining the value of the additional footage which would without doubt have been included in the description, if the necessity therefor had been known, can be used than by applying a proportionate value on the basis of the One Thousand Three Hundred Fifty ($1,350.00) Dollars previously paid. A computation of the acreage for which Olsen was paid is 0.7878. The acreage in the piece not described and for which compensation is now asked is 0.1290, or 16.3% of the land paid for. Claimant is therefore entitled to 16.3% of One Thousand Three Hundred Fifty ($1,350.00) Dollars, or Two Hundred Twenty and 05/100 ($220.05) Dollars. The Demurrer of Respondent is therefore denied, motion to dismiss overruled and an award is hereby allowed in favor of claimant LOUIS OLSEN for the sum of Two Hundred Twenty and 05/100 ($220.05) Dollars, in payment of land taken for highway purposes as described in the complaint herein.